UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SHANNON BRYDEN,

    Plaintiff

v.

CONNIE MORRIS,

    Defendant

Case No.: 3:25-cv-00379-CSD

**Order**

Re: ECF No. 14

Before the court is Defendant Connie Morris' motion to dismiss. (ECF No. 14.) Plaintiff Shannon Bryden has opposed (ECF No. 20), and Defendant has replied (ECF No. 23).

## I. BACKGROUND

Plaintiff filed her *pro se* complaint against Defendant, on July 24, 2025. Defendant, a resident of Texas, moves to dismiss the complaint on several grounds, including lack of personal jurisdiction. (ECF No. 14.)  For the reasons set forth below, the motion to dismiss is granted.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) contemplates the filing of a motion to dismiss for lack of personal jurisdiction. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

If the court does not hold an evidentiary hearing, Plaintiff is required only to make a prima facie showing of jurisdictional facts. *Id.* However, the "plaintiff cannot simply rest on the bare allegations of its complaint"; she "is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Wilson v. PTT, LLC*, 351 F. Supp. 3d 1325, 1331

(W.D. Wash. 2018) (citing *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

A plaintiff makes a prima facie showing by producing "admissible evidence which, if believed, would be sufficient to establish personal jurisdiction." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (citing *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d. 1122, 1129 (9th Cir. 2003)). Uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800.

The court applies the law of the state in which it sits to determine whether it has personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Nevada's long-arm statute authorizes the exercise of personal jurisdiction "on any basis not inconsistent with . . . the Constitution of the United States." Nev. Rev. Stat. § 14.065. In Nevada, then, the question is thus whether the exercise of jurisdiction "comports with the limits imposed by federal due process." *Walden*, 571 U.S. at 283. There are two ways to establish personal jurisdiction: general and specific.

General jurisdiction exists "over an individual when that person's contacts with the forum are 'so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes.' *Fernandez v. Tox Corp.*, 677 F. Supp. 3d 1089, 1100 (C.D. Cal. 2023) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). However, in "rare instances," an individual's contacts with a forum can be deemed so substantial that general jurisdiction may be asserted. *See Hendricks v. New Video*

*Channel Am., LLC*, No. 2:14-CV-02989-RSWL-S, 2015 WL 3616983, at \*4 (C.D. Cal. June 8, 2015) (collecting cases).

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919.

To determine whether specific jurisdiction exists, the court applies a three-part test. First, the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Doe v. Deutsche Lufthansa*, 157 F.4th 1103, 1110 (9th Cir. 2025). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Finally, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.*

The plaintiff bears the burden of proving the first two prongs. If she does so, the burden then shifts to the defendant to "'set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable.'" *Picot v. Weston*, 780 F.3d 1206, 1211–12 (9th Cir. 2015) (citations omitted).

The specific jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation," and for jurisdiction to be proper, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 283-84. Importantly, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "Due process limits on the State's adjudicative authority principally protect the liberty of the

3

nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* Additionally, the inquiry must focus on the defendant's contacts with the forum, not the defendant's contacts with persons residing there. *Id.* at 285. It is "insufficient to rely on . . . the 'unilateral activity' of a plaintiff." *Id.*

### III. DISCUSSION

The complaint alleges that Plaintiff sent Defendant $4,000 in cash and later wired $120,000 to Defendant's bank account, for the purpose of purchasing property in Texas. Plaintiff asserts Defendant was portrayed as a real estate agent on Instagram and WhatsApp. Although Plaintiff later asked Defendant to cancel the transaction and return her money, Defendant never returned the funds, and Plaintiff never received her property. (ECF No. 1.)

The parties present the following evidence.

In a declaration, Plaintiff states that she met "Johnny" on Instagram in 2022. In February 2023, she told Johnny she wanted to buy property in Florida or Texas, and Johnny said he knew a real estate agent who could help her. Plaintiff then agreed to buy a property in Texas for $124,000. (ECF No. 21.)

On February 28, 2023, Johnny asked Plaintiff to mail a $4,000 down payment to Connie Morris, a realtor, at a Texas address. That same date, Plaintiff received several bitcoin transfer requests through WhatsApp from a screen name similar to Johnny's. Plaintiff became concerned that she was being scammed. The next day, Johnny provided Plaintiff the wire transfer information for Defendant via WhatsApp. When Plaintiff expressed that the bitcoin requests made her question the legitimacy of the transaction, Johnny told her the requests were coming from spammers. Immediately after, "Connie Morris" called Plaintiff via WhatsApp, but the call

went to voicemail and "after review of the message, it was transcribed from speech to text." In the message, "Connie" assured Plaintiff that Johnny was authentic. (*Id.*)

On March 3, 2023, Plaintiff transferred $120,000 to Defendant's bank account. Plaintiff's daughters learned of the situation and immediately contacted Plaintiff's bank, which began contacting Defendant's bank. (*Id.*)

On March 22, 2023, Johnny contacted Plaintiff and asked her not to involve Defendant; he promised he would send her money back. (*Id.*)

On March 23, 2023, Plaintiff sent Defendant a letter asking for her money back. (*Id.*)

On March 27, 2023, Plaintiff asked Johnny about the money, and he said he was getting ready to send it back. Johnny also sent Plaintiff a screenshot of the letter Plaintiff had sent to Defendant. Johnny reiterated that Plaintiff should not contact Defendant's bank. (*Id.*)

The next day, when Plaintiff again asked about the return of her money, Johnny said someone named "Larry" needed to get to the bank. (*Id.*)

On April 1, 2023, Johnny told Plaintiff that, according to Larry, Plaintiff's money had been stolen by a FedEx driver. (*Id.* at 3.)

In an affidavit, Defendant acknowledges that she received Plaintiff's money, but states that she immediately transferred it via bitcoin to someone she met online, at that person's instruction.[1] This person, who Defendant refers to as "the scammer," told her the money was owed to them, and Defendant believed this. At no time was Defendant aware of Plaintiff or the fraud involving her. Over the course of six months, Defendant also transferred $298,000 of her own savings to the scammer. (ECF No. 15.)

---

[1] Defendant asserts that the $4,000 was sent to her via check, and that she immediately cashed it before sending it along to the third party. Plaintiff disputes that she sent the money by check and states instead that she mailed $4,000 in cash.

In March 2023, Defendant received a letter from Plaintiff stating that Plaintiff had been scammed into transferring $125,000 for the purchase of a property in Florida but that she wanted out of the transaction. The letter asked if Defendant had the funds to return to her. Defendant had no idea what the letter referred to and did not engage in further communication with Plaintiff. A few weeks later, Defendant received a phone call asking for her to return money the caller's mother had transferred to her for the purchase of property in Florida. Again, Defendant did not know what the caller was talking about. (*Id.*)

Defendant avers that she is not a real estate agent and has never held herself out as such, and that she has never contacted anyone on Instagram or WhatsApp and does not have an account on either. (*Id.*)

Preliminarily, the court addresses Plaintiff's contention that the federal wire fraud statute allows this court to exercise personal jurisdiction over Defendant. The statute, 18 U.S.C. § 1343, is a criminal provision that does not provide a private right of action. *See Tobias v. Cascade Apartments*, No. 2:25-CV-00762-APG-BNW, 2026 WL 499786, at *3 (D. Nev. Feb. 3, 2026), *report and recommendation adopted*, No. 2:25-CV-00762-APG-BNW, 2026 WL 498821 (D. Nev. Feb. 23, 2026) (collecting cases); *Riley v. Quality Loan Serv. Corp.*, No. 3:18-CV-1297-WQH-AGS, 2019 WL 157838, at *1 (S.D. Cal. Jan. 10, 2019). Its venue provisions therefore do not apply in a civil case and do not authorize this court to exercise personal jurisdiction over Defendant.

On the question of general jurisdiction, nothing in the pleadings or submitted evidence establishes that Defendant is present in Nevada such that she should be subject to general jurisdiction in the state. The unrefuted evidence in the record establishes that Defendant does not live or do business in Nevada, has no financial or other ties to the state, and last visited the state

twenty years before the controversy in question. (*See* ECF No. 15 at 1.) Plaintiff makes no allegations which, if true, would support a finding of general jurisdiction.

As to specific jurisdiction, purposeful availment can exist even when a defendant's "only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Schwarzenegger*, 374 F.3d at 803. This test usually applies where, as here, the plaintiff's claims sound in tort. *Id.* at 802. To establish jurisdiction in this way, the defendant must have (1) allegedly committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* at 803.

Plaintiff presents no admissible evidence or uncontroverted allegation establishing *any* affirmative action by Defendant directed at Plaintiff or Nevada. The parties' accounts essentially agree that Defendant was the passive recipient of funds transferred by Plaintiff pursuant to a scheme orchestrated by an online scammer.

While Plaintiff asserts in her response brief that she believes Defendant was involved in the scheme because the scammer referenced a person named "Larry" and Defendant has a family member named Larry, (ECF No. 20 at 11), Plaintiff's conjecture the Defendant was somehow involved is not admissible evidence that can support a finding of personal jurisdiction. *See Enertechnix, Inc. v. Syn-Fab, Inc.*, No. C15-0744RSL, 2015 WL 5331152, at *2 (W.D. Wash. Sept. 14, 2015) (holding plaintiff failed to make prima facie showing of personal jurisdiction where allegation that defendant sold infringing products in forum state was based on nothing by speculation and conjecture); *Kruska v. Perverted Just. Found. Inc.*, No. CV 08-0054-PHX-SMM, 2009 WL 249432, at *5 (D. Ariz. Feb. 2, 2009) (same); *see also Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and

based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery. . . . In light of [plaintiffs'] purely speculative allegations of attenuated jurisdictional contacts, the district court did not abuse its discretion when it denied Plaintiffs' request for further discovery.").

Likewise, Plaintiff's claim that Defendant left her a WhatsApp voicemail vouching for Johnny's legitimacy is not supported by any admissible evidence. The screenshot of the transcribed voicemail does nothing to establish that it was Defendant who sent the message. And because Defendant specifically denies ever having contacted anyone on WhatsApp, the court need not accept this allegation as true.

Finally, Plaintiff points to a number of other connections between "Johnny" and Defendant, including that: (1) Johnny had a copy of the letter Plaintiff had sent to Defendant; (2) Johnny knew Plaintiff was contacting Defendant's bank; and (3) Defendant told Plaintiff's daughter during a phone call on April 7, 2023, that the money was for property for someone else and that she had sent the money back but the FedEx driver must have stolen it.

While some of the above assertions are not supported by any admissible evidence,[2] the court will assume for the purpose of resolving this motion that they are true. None of these factors establishes Defendant's involvement or awareness of the scam being run on Plaintiff, particularly as they are easily explained by the fact that Defendant was admittedly in contact with and following Johnny's directions. It is therefore not surprising that she would have shared information with Johnny (that her bank was being contacted by Plaintiff's bank and that Plaintiff

---

[2] Plaintiff's exhibits do not show that Johnny sent Plaintiff a copy of the same letter Plaintiff had sent to Defendant, although Johnny's response seems to show that he was aware of its contents. (*See* ECF No. 22 at 29.) And Anderson's Declaration cannot be located on the record, but the court assumes for the sake of this motion that such a documents says what Plaintiff claims it says and that it could be filed with the court. (*See id.* at 10).

sent her a letter) or that Johnny would have shared information with her (the money had been sent back to Plaintiff but a FedEx driver must have stolen it). But more importantly, even if these allegations did establish that Defendant was involved in the scam, Plaintiff has pointed to *no* evidence that Defendant was aware that Plaintiff was a Nevada resident or knew that the harm of her actions would be suffered in Nevada. Absent this basic showing, Plaintiff cannot and has not made a prima facie case of purposeful availment.

Even if Plaintiff had carried her burden on the first two prongs of the jurisdictional test, however, the court finds that Defendant has made a compelling showing that exercise of jurisdiction over her – a Texas resident with no connection to Nevada who may or may not have been caught up in a scheme with an online scammer who also stole from her (more than twice as much, in fact, as he did from Plaintiff) – would be unreasonable. On that ground alone, the court would conclude it lacks personal jurisdiction over the Defendant.

The motion to dismiss for lack of personal jurisdiction will therefore be granted. Because the court dismisses on those grounds, it does not reach Defendant's other arguments for dismissal.

## IV. CONCLUSION

The motion to dismiss (ECF No. 14) is **GRANTED**, and the complaint is **DISMISSED** for lack of personal jurisdiction. The Clerk of Court shall enter final judgment accordingly.

**IT IS SO ORDERED**.

Dated: April 29, 2026

_____
Craig S. Denney
United States Magistrate Judge